The United States Army Corps of Engineers,      is committed to creating a future for all Americans. When you're ready, Mr. Morgan. Good morning, Chief Judge Rader, Judge Lurie, Judge O'Malley, I'm Skip Morgan, on behalf of Colonel Dan Cameron, who appears today. The issue before this court is, I won't even say deceptively simple. It's simple, and that is this. The court below decided that he was entitled to a continuation board, but that that continuation board had to be a Title 32 board conducted by his state. It's been a long time with these facts, and I'm sure each of my colleagues did too. Your big problem is you have to get around deference, which we owe particularly to military judgments as to where things belong in interpreting their own regs and their own procedures. How would you advise us to proceed with that deference doctrine? Your Honor, I'm glad you asked that question, because we would accept the greatest deference that can possibly be afforded to an agency's interpretation of its own regulation. But this does not happen to be that. Secretary Brown put out an Army regulation, an Army general regulation, pursuant to his directive that says all Title 10 AGR officers serving on AGR tours, Title 10 AGR tours, will meet a continuation board if they make it into the window of opportunity, and I think the defendants concede that that's what happened. The ones interpreting that regulation was not the Department of the Army. The Army regulation was designed to protect and to provide due process to Army AGR, Title 10 AGR officers, and Secretary Brown made it manifestly clear that he was unhappy with the National Guard Bureau's way of doing things in the past, which was ad hoc, behind the green door kind of process. In all of the advisories before this Court Did it say all Title 10 AGRs or did it say all eligible Title 10? The directive said all Title 10 AGRs and so did both of the announcements from the National Guard Bureau itself. Both of those announcements, Your Honor, said all Title 10 AGR officers. So the eligible went back, but to continue on the Chief Judge's question, because I think it's very important, when this went to the Army BCMR, the advisories were not sent to the Secretary of the Army's Office for Manpower and Reserve Affairs. It was not sent to the Head of Personnel for the Army. It was not sent to anyone except the National Guard Bureau, a separate entity bound to be sure by the Army's regulation, but nevertheless the one that we would submit was culpable in this particular case. And so I would say that the deference should not be afforded to the NGB because the National Guard Bureau is a creature of both Army and the Air Force. But the deference should be if the Army had said, Army qua Army, this is what I intended when I said all Title 10 officers. Well that kind of gets us back to the other point. The orders of Colonel Cameron said very clearly this is an occasional one-time tour. Doesn't that suggest that he really remained with the National Guard and therefore the National Guard Board was the governing body to make this decision? Your Honor, the same order said this transfers the officer from Title 32 to Title 10 status. Those same orders say that. The one-time occasional tour, much brooded and the basis in large measure for the court below's decision is a creature of no directive, no regulation or anything else. If all Title 10 officers, AGR officers, excludes people with one-time occasional tours, one would expect to see that somewhere, someplace in any of the directives or regulations or in the orders or in the announcements. One will not find it anywhere. The only place that one-time occasional tour is defined in all of the panoply of DOD and Air Force and Army directives and so forth is in a 1205.18 that says there's only two kind of tours that you can have. One is a probationary tour which nobody is saying that Colonel Cameron was on and the other is a one-time occasional tour. As well, the Oregon National Guard who cut these orders said this is the only kind of tour he could have been on. It's the only kind. There's nothing distinguishing that and that gets down to the... Do you know whether there are other Title 32 people who originated as Title 32 guards who were on one-time tours, in other words, similarly situated individuals who were treated either the same or differently? I can't speak about how they were treated. I can say this. Chief Warrant Officer O'Donnell from the Adjutant General of Oregon said we cut these orders all the time, putting officers on Title 10 status. They always say it was boilerplate one-time occasional tour because that's the only kind of tour that could bring them on to active duty. As well, in the BCMR record, you see that Chief Warrant Officer O'Donnell actually said and I have enclosed four different sets of orders from other officers in the same situation as Colonel Cameron and they all say one-time occasional tour. Now, in the BCMR record, two things of significance. The first is the first time that this came back from the BCMR with the remand from the court, the National Guard Bureau said the Oregon National Guard concurs with our assessment. That turned out not to be true at all. On the contrary, the Oregon National Guard says this is the kind of orders we do all the time. Here are sets of examples of other orders of other officers ordered to the same kind of tour. If this was such a big exception, why would the Secretary of the Army say all Title 10 AGR officers? So you're saying that this is not a situation where someone is, for instance, temporarily deployed somewhere else. He actually shifted from being a Title 32 to a Title 10. Yes, ma'am. And that's exactly what his orders say. It says he is transferred from Title 32 to Title 10 status under 10 U.S. Code 12301D. And that's the only way that you can put somebody on Title 10 AGR orders. The last part of what I was trying to say was the record in this case is really very clear. Every citation to authority for the so-called title for the one-time occasional tour or the career program versus the career program finds no support in the law or directive. And that's why the question, should we give deference to the agency's interpretation of its own regulations? Indeed we should. But we don't have the Army's interpretation. We have the offender's interpretation in this case. And that interpretation would swallow the whole rule. Because if the National Guard Bureau can decide on its own what eligible means, then without having any notice. You, by the way, are not included in this. In both of the different announcements, the 2004 and the 2005 announcements, there was a list of ineligible officers. For example, Title 10 AGR officers who were in training brigades. It told everybody, if you are in this training brigade, you are not part of this. Wouldn't an exception as large as this one have somehow found its way into the directive and into the announcement? I would respectfully suggest that it could not and be a real manifestation of what the Army asked for. I reserve this right now. Thank you very much. Mr. Morgan. Ms. Devine. Judgement of the trial court should be affirmed. Judgement of the trial court should be affirmed. This case is about, as Your Honors pointed out, about the tremendous deference that this court affords agency interpretations of its own regulations. But then further, even more so, provides the Army in its own regulations as regards to national defense. But then even further provides to the Army in its interpretation of its regulations that has to do with personnel matters, that is, who is fit to serve or who serves in the Army. Did all of this interpretation to which we owe deference, that all happened in advance of the litigation or after? The original interpretation was communicated to Colonel Cameron before this litigation took place but also, Your Honor, the policy... But any official record is almost all after this litigation is underway, isn't it? Yes, Your Honor. The interpretation that was provided was provided... What deference do we owe to something which is a litigation-driven position? The position that was provided by the NGB was pursuant... or the National Guard Bureau was made pursuant to an adjudicative proceeding for the agency, which is entitled in Smith v. Nicholson, which this court stated that an adjudicative position that is presented in an adjudicative proceeding is entitled to the same deference that would be presented to the... That's kind of based on the Supreme Court's hour decision, right? Correct, Your Honor. Christopher dialed back on that last year. How does that affect everything? The... Again, Your Honor, the court's determination is clear and the hour is clear that... Well, but Christopher addresses hour and says we're dialing back. I think that's exactly the word the Supreme Court used, that there can be a post-talk litigation-driven rationalization which deserves less deference. How do we address that, Christopher, reorientation of the hour standard? Well, this would be different than our situation in which an agency proffers before the court its interpretation of the regulation. Here, you have an adjudicative proceeding that happens in many different agency proceedings. You have, for example, Department of Commerce. You have these board determinations, happens in VA cases. You have... And SEC v. Chenery is clear that the agency has the authority to either pass regulations or to interpret those regulations. These adjudicative proceedings are provided precisely for a rise when the regulation was passed. And indeed, Title X, these kinds of one-time occasional tours are very rare. So the Army, the NGB and then the Army, when it was faced with this particular circumstance, looked at the regulation as it does in adjudicative proceedings and has the authority to do so, as SEC v. Chenery states, to interpret these interstices of the regulation. Excuse me. Since we're interpreting is not very ambiguous. It says an eligible officer automatically gets this review. I mean, that's not very ambiguous. Eligible is ambiguous, as the court found. Who is considered eligible for a board is not defined in the regulation and indeed the agency, for example, the National Guard Bureau, pursuant to 10 U.S.C. 10503 subsection 10, is the agency that is pursuant to statute given the responsibility to administer and oversee the AGR program, the Active Guard Reserve program. Eligible is not defined in the regulation as far as what is considered... If they're given the authority to oversee it, does that mean that these regulations that are Army regulations become their regulations for purposes of deference? Because they're not really interpreting their own regulations. They're interpreting Army regulations. Correct. The NGB provided its advisory opinion as to what those regulations it deemed those regulations to mean in supervising and administering the program. And then the ABCMR, which is the Army board that interpret these regulations, looked to what the NGB stated in its advisory and said, this is reasonable. We defer or we look to what the NGB stated and find that to be a reasonable interpretation. Why wouldn't the secretary's original letter that said all Title 10, why wouldn't that constitute an interpretation of who's eligible? Anybody in Title 10 status? Every AGR soldier in Title 10 status and every soldier in Title 1032. I believe the Brown... But do you dispute the fact that as a matter of fact you can't be both? You can't be both statuses at the same time, right? Well, for example, I would make an example. I work for the Department of Justice. It's often that people like me in the Department of Justice serve a detail. I would go to the Office of Personnel Management, for example. Because I'm working a detail OPM, I don't enter the OPM career program such that... That's the very distinction that I was making with your friend over here. Because it actually is different in these circumstances. It's not like a detail. If you were pulled out of the Department of Justice and became an OPM employee for all purposes, then you'd be an OPM employee, not a Department of Justice employee. Well, for all intents and purposes except for my career path. My career path would still be Department of Justice. Even though I'd be  an OPM career program. But that's not the way the Army does it. Well, yes it is, Your Honor. If you look at Army Regulation 135-18, subsection 2-1, which is on 376, and this is subsection E, that AGR soldiers on active duty are not considered as having a break in service from AGR status when they are under the provisions listed below. And E subsection 1 includes Title 10 U.S.C. Section 12-301D, which is precisely what Colonel Cameron was serving under. So that means, Your Honor, that simply because a soldier that is a Title 32 career program soldier serves on a one-time occasional tour, does not have a break in service from his Title 32 AGR career program. And indeed, if Your Honor looks at, for example, Section 2-6 of that same regulation, it is only career soldiers that are subject to the 20-year mandatory release date. So you're saying he was still under Title 32. He was still under the Title 32 career program, yes, Your Honor. How can Oregon order him to Colorado? If he's an Oregon officer, they can't send him to Colorado, can they? The only person who can send him to Colorado is the Army, which means he was in Title 10. Well, Your Honor, the regulation actually states on 135-18 that a soldier, the state of Oregon or the state, may order a soldier to Title 10 AGR or another program for a one-time occasional tour. And yes, the Army can provide these orders, but it was from the state of Oregon. Your response to my comment that he's automatically entitled was that only if he's eligible. But that's defined very clearly in the October 2004 memo, for instance. And that definition of eligible fits Col. Cameron to a T. Well, I would disagree, Your Honor. I think the regulation... Where does he fail to fit that? Well, the letter states that, and I believe Your Honor is talking about the 2003 NGB letter. I was actually talking about the October 2004 comment that says that officers beyond 20 years, the officer must be awarded and selected for continuation by the ASTCB. Correct, and if Your Honor will look, I believe that's Section 7, and it's on JA-51, states that Title 10 and 31 AGR officers who have 19 or more years of active service, and the 19 or more years of active service is considered the zone of consideration. We come down to Paragraph 7 in that 2004 October memo, and we get a whole category, which is eligible officers. Correct. And that fits Col. Cameron, doesn't it? Well, it says... What doesn't fit Col. Cameron, maybe is what I need to know. Well, certainly he falls under this as being eligible. However, what we're talking about here is who is eligible under the Title 10 continuation board, which is interpreted by the Army, and you're talking about the Title 32 continuation board, which is held by the state of Oregon. Now, to the extent eligible is interpreted by the state of Oregon to mean soldiers like Col. Cameron, we submit that that is error, and in fact the state of Oregon had no authority... But I'm kind of back to the point where I don't see any ambiguity in the order which requires interpretation. If it says eligible officers automatically go here, he is eligible, he's an officer, he automatically goes there, doesn't he? Well, certainly he is eligible. He's eligible for a board. He was eligible for a board. The question is which board? And the Title 10 board was held by the NGB, who was responsible as part of the Army, and also under 10 U.S.C. 10.503 subsection 10, was responsible for supervising and administering the AGR program. To the extent soldiers were eligible for the Title 32 board, that was to be held still being interpreted as an Army regulation and supervised and administered by the NGB. Soldiers that are eligible for the Title 10 excuse me, Title 32 boards was interpreted to be those soldiers in the Title 32 career program. And indeed, again, as I stated, subsection 135-18 states that only career soldiers were subject to the 20 year mandatory retirement, or excuse me, mandatory release date. So Colonel Cameron actually, in his one time occasional tour, served past his mandatory release date, and what ended up happening is his home career position was not extended. So Colonel Cameron had nothing to return to in the state of Oregon. What's the rule today in this exact same area? The rule today is not relevant, Your Honor, however... But it's exactly the opposite, isn't it? Yes, Your Honor. But at the time, this was the first board that was passed. It was the first board that was held, and in interpreting, who was subject to the Title 10 and the Title 32 was the interpretation by the agency that was supervising and overseeing it. It was brand new. But this seems to be somewhat relevant because you want us to defer to the Army's interpretation that was created during this heated litigation and yet when they got a chance to reflect on it later outside the litigation, boom, they reversed it completely and it's exactly the opposite today. What deference do we give to that? Well, Your Honor, that's a later interpretation. It is entitled to the same deference as would be entitled to the NGB's interpretation of the 2003, excuse me, 2004 and 2005 boards as to who was eligible for those Title 10 boards at the time. However, simply because an agency has switched its mind, agencies change their policies all the time and it doesn't mean that an earlier interpretation would be that the agency changed its policies later on. And this also happens fairly regularly in agency adjudicative proceedings. And unless Your Honors have any further questions, we respectfully request that the Court affirm the judgment of the trial. Thank you, Ms. Devine. Mr. Morgan, you have time. Thank you, sir. Counsel made the point here and she said one-time occasional tours are rare. There is no support in the record for that being the case. The only thing in the record which talks about one-time occasional tours, about that language in the orders, comes from the very agency that created those orders at the same time and indicated it was a commonplace and standard practice for any officer as senior as Colonel Cameron was to be ordered into Title 10 AGR practice, which goes back to the point that we make with respect to Mr. Gonzalez testifying because the only support for the Court's finding on the rarity or the significance of the orders is actually found in what he told the Court that day about Title 10 orders. There's no support in the record for that. Your Honor, to sort of bring this all together, if we were to take the hypothetical where this Court affirmed the lower court's judgment and Colonel Cameron were to take that judgment and go back into federal court under Title 32 and go back to Oregon and say you see, I was entitled to a board and you all failed to give it to me. You didn't even give me any notice. Defending that would be absurdly easy because Oregon would simply say how can we a state entity extend you on federal active service? I think Judge O'Malley asked you a question similar to this but I want to explore it a little more. Is there any officer that you know of in the same situation as Colonel Cameron that really didn't get access to either board? The answer to your question, sir, is I don't know of any. I just don't know. Colonel Cameron, of course, had his contemporaries there. He got the announcement from a friend of his who was assigned at the same time and that's when he scratched his head and said well wait a minute, I'm in the same situation. Beyond that, I don't know. I only know... Was that friend on a one-time active duty or whatever that characterization is? I'm sorry, Your Honor, I can't answer that. I think I know but I can't answer it for certain because I don't think Colonel Cameron could have answered it for certain, not having asked to look at the orders. But the point is, as a matter of constitution and indeed there's a Court of Criminal Appeals or Armed Forces Court of Opinion that says just that. States can't continue anybody on active duty. So if we were to take this judgment and say okay, it's conceded you were entitled to a board but it's a Title III-2 board and he were to take that, I would submit very respectfully that he would be thrown out of court before the first pleading hit the desk. Thank you, Your Honor, very much for your time. Thank you. I think that concludes our hearings this morning. All rise. The Honorable Court adjourns until tomorrow morning at 10 o'clock.